**OGDEN ENVIRONMENTAL SERVICES, INC., a Delaware corporation, Plaintiff,**

v.

**CITY OF SAN DIEGO, City Council of the City of San Diego, and Maureen O'Connor, Abbe Wolfsheimer, Gloria McColl, Ed Struiksma, Bruce Henderson, Ron Roberts, and Bob Filner, as Members of the City Council of the City of San Diego, Defendants.**

Civ. No. 88–0252–K(M).

United States District Court,
S.D. California.

Aug. 22, 1988.

David L. Mulliken, Kristine L. Wilkes, Latham & Watkins, San Diego, Cal., for plaintiff.

C. Alan Sumption, Chief Deputy, Leslie J. Girard, Deputy, City of San Diego, Litigation Div., San Diego, Cal., for defendants.

### MEMORANDUM DECISION AND ORDER

KEEP, District Judge.

This matter is before the court on plaintiff Ogden Environmental Services, Inc.'s ("Ogden") motion to enforce the court's order of May 11, 1988 and for summary judgment as to its thirteenth cause of action for preliminary and permanent injunctive relief.

On May 11, 1988, this court issued an order finding that the City of San Diego's ("City") conduct in denying a conditional use permit for Ogden's research, development, and demonstration hazardous waste incinerator violated the doctrine of federal preemption and directing the City to reopen

the permitting process. More specifically, the court found that in light of the federal policy to encourage expedited permitting of such research, development, and demonstration projects under the Resource Conservation and Recovery Act, 42 U.S.C. § 6901, *et seq.* and the Comprehensive Environmental Response, Compensation, and Liability Act ("Superfund"), 42 U.S.C. § 9601, *et seq.*, and the approval by relevant state and federal agencies of the project as safe, the City could not enter the decision-making process at a relatively late date and deny local approval of the project based on unspecified health, safety, and environmental grounds without articulating any legitimate local concerns or imposing any particular requirements which the facility must meet. The court was particularly concerned that the City's last minute adoption of a conditional use permit requirement for the project, coupled with its completely discretionary review and denial of the permit application on vague health and environmental grounds, created the potential for a "sham" in which the City could simply use the conditional use permit process to effect a *de facto* prohibition on such facilities. At the same time, the court recognized that under the applicable federal legislation, local governments do have a role in the permitting process. In an effort to allow the City to fulfill its role in the statutory scheme, the court declined to grant plaintiff's request to order that the City issue the permit. Rather, the court's order instructed the City to reopen the Ogden permit application in a manner consistent with its interpretation of federal law. The May 11, 1988 order, as amended on June 7, 1988, is hereby fully incorporated herein. *See Ogden Environmental Services, Inc. v. City of San Diego,* 687 F.Supp. 1436 (S.D.Cal.1988).

The record currently before the court reveals that subsequent to the May 11 order, Ogden's counsel sent two letters, dated May 12, 1988 and May 27, 1988, to the City Attorney's Office, offering to resume discussions regarding the Ogden application. (Plaintiff's Exhibits C & D). The

City Attorney's Office apparently did not respond to these requests in part because it felt that such a meeting would not be helpful in responding to the court's order and in advising the City Council. (Declaration of Alan Sumption at 3). The Ogden matter was finally put on calendar for the Council's executive session on May 31, 1988, although plaintiff was apparently not notified of this schedule. At this executive session, the Council apparently requested further briefing from the City Attorney's Office and continued the matter until June 6, 1988. The matter was subsequently continued again to June 7. After a closed session briefing of the Council by the City Attorney's Office and the Planning Department on June 7, the matter was again continued for further discussion and briefing to June 13. On June 8, Ogden scheduled a motion to enforce the court's prior order and for injunctive relief on this court's calendar, requesting that the court order the City to act on the permit.

On June 13, 1988, before Ogden's motion was heard by this court and after a morning executive session, the Council adopted a resolution denying the permit application and directing the City Manager to undertake an attempt to identify City-owned land zoned for agricultural or industrial use which would be compatible with the Ogden project. The City Manager was directed to submit a report concerning site availability within 45 days. In response to this action, Ogden changed the basis for its motion, arguing that the City's actions had now resulted in a *de facto* ban on the project, in violation of the court's earlier order.

On June 22, after plaintiff had filed its moving papers, the Council passed an emergency ordinance, authorizing the City to issue conditional use permits for such research, development, and demonstration facilities in any agricultural or manufacturing zone. Plaintiff now responds that this emergency ordinance is invalid under California law and that, in any event, it simply codifies the City's *de facto* ban of the project.[1]

---

1. The City filed an objection to plaintiff's reply    on the grounds that it was not provided for in

## DISCUSSION

Plaintiff's primary argument is that the City's cursory second denial of the permit application, based on unsupported conclusory findings, and its resolution that the Ogden project is inappropriate for the Scientific Research Zone ("SR Zone"), where it is currently located, constitute a *de facto* ban on the facility, in violation of congressional intent and this court's May 11 order. The City responds that the issuance of a conditional use permit is in the sound discretion of the Council, that the court must not substitute its judgment for that of the governing body, and that there is substantial evidence on the record to support the City's denial. I find the City's response to be a simplistic analysis in that it ignores the significant overlay of important federal legislation and national interests that formed the core of this court's previous ruling and the basis for its jurisdiction. This court's role is not simply to review the City's action under the deferential substantial evidence standard which is traditionally invoked by state courts in reviewing local land use decisions. *See Topanga Ass'n for a Scenic Community v. County of Los Angeles,* 11 Cal. 3d 506, 514, 113 Cal.Rptr. 836, 840–41, 522 P.2d 12, 16–18 (1974). Rather, the question presented on this motion to enforce the court's May 11 ruling and for injunctive relief is whether the City's actions constitute "good-faith adaptations of federal policy to local conditions," *Ensco, Inc. v. Dumas,* 807 F.2d 743, 745 (8th Cir.1987), or whether they amount to a *de facto* ban on the Ogden project in frustration of congressional objectives. *See Rollins Environmental Services, Inc. v. Parish of St. James,* 775 F.2d 627, 635–36 (5th Cir.1985).

### I. *City Council Actions Since May 11, 1988*

The court turns first to the record of the City Council's actions since the May 11 ruling. The earlier record that was before this court for plaintiff's first summary judgment motion, which is also relevant to this motion and is incorporated herein, was not reopened or augmented by the City Council. Rather, at the June 13 hearing, Council member Wolfsheimer made oral findings based on the existing record, which were subsequently incorporated essentially verbatim into a written resolution. Basically, the Council found first that the Ogden project "is substantially different than the type of scientific research intended and contemplated for the SR (Scientific Research) Zone and which is presently conducted therein." (Plaintiff's Exhibit I at 1). In support of this finding, the resolution notes that:

A. It was never intended that activities in the SR Zone would have external effects;

B. Hazardous waste is inherently dangerous to human health, safety and the environment and the long term effects of this project on the surrounding property and population are unknown; and

C. The proposed project is more closely related to uses allowed in the agricultural or manufacturing zones.

*Id.* at 2.

Second, the Council found that the proposed location was detrimental to adjoining land uses "from an economic, social and psychological standpoint due to the adverse impact on property values, tax revenues, ability to attract business, tourism and industry" of the area, noting the project's proximity to medical facilities, hotels, golf courses, a state reserve, the university, residential property, a child care center, schools, office and commercial facilities, and beaches. *Id.*

---

the original briefing schedule. The court finds this to be an unpersuasive argument since the City saw fit to act in a significant manner after the moving papers were filed, but before the hearing. In any event, the reply papers add very little to this analysis since they focus heavily on the invalidity of the emergency ordinance, which the court will not address, and because

the court already had a copy of the proposed ordinance, attached to the City's opposition papers. The City, in effect, drew this new development to the court's attention in its opposition papers, and clearly plaintiff should have an opportunity to reply to how the new ordinance affects the proposed project, as well as to discuss the legality of the ordinance.

Finally, the Council found that for the above-stated reasons, the project "will adversely affect the neighborhood, the General Plan and the Community Plan and will be detrimental to the general welfare of persons residing, working, or visiting in the area." *Id.* at 3. The resolution also directed the City Manager to attempt to identify compatible land in agricultural or industrial zones for the project and it instructed the City Attorney to draft an amendment to the municipal code conditionally allowing such uses in agricultural and manufacturing zones. *Id.* In response to this directive, the City Attorney drafted and the City Council adopted an emergency ordinance which authorizes the City to issue conditional use permits for Resource Conservation and Recovery Act research, development, and demonstration projects in agricultural or manufacturing zones.[2] (Plaintiff's Exhibit S).

█ On its reconsideration and second denial of the permit application, the City has again failed to articulate any specific, legitimate requirements which it might properly impose on the new project under the "savings" clause of the Resource, Conservation, and Recovery Act. 42 U.S.C. § 6929. Rather, it has again invoked the vague grounds that the project is "inherently dangerous to human health, safety and the environment," that its effects are "unknown," and that it will be detrimental to the Community Plan and the general welfare. These generalized findings are almost identical to those that the court previously found provided an improper basis for denying local approval of a project

already scrutinized and sanctioned by federal and state authorities, in light of significant congressional intent to encourage such research and demonstration projects in the hazardous waste field. The court reaffirms its earlier holding that the City may not deny project approval at this late date based on such unspecified health concerns.[3]

Apparently taking a cue from the court's explicit discussion in its prior decision of the City's residual land use authority under the "savings" clause, the new resolution also includes the equally conclusory and totally unsupported finding that the project will have a detrimental impact on property values, tax revenues, ability to attract business, tourism and industry. It seems evident from the record that this language was added, as an attempt to tie the permit denial into traditional land use concerns. However, since there was no evidence on these issues in the previous record and no new discussion or evidence was added to the record before the City Council, this additional laundry list of justifications for the denial appears designed merely to appease the court; it has no substantive basis in the record. Thus, from the record before the court, I find that the City has not attempted to implement the guidance provided by this court's earlier decision in any meaningful way.

Unfortunately, even assuming that the court were inclined to allow the City another opportunity to satisfy legitimate local concerns about the Ogden project by essentially "remanding" the permit application

**2.** Although for the reasons discussed below, the court does not find it necessary to reach plaintiff's argument that the ordinance is invalid under California and municipal law, I do note that plaintiff raises some serious questions about the validity of the ordinance. Further, I note the language of the new ordinance, which is almost identical to the earlier Conditional Use Permit Ordinance except that the zones in which such projects are permitted have been changed, provides no standards or requirements by which such permit applications are to be assessed. It was this same type of broad discretionary authority, coupled with the City's failure to articulate any specific problems with or requirements for the Ogden project, which concerned this court in the previous ruling.

**3.** As the court noted in its previous ruling, the City deferred to the California Department of Health Services ("DHS") as the lead agency in evaluating the environmental impacts of the project under the California Environmental Quality Act. *Ogden Environmental Services, supra,* 687 F.Supp. at 1450–1452. Furthermore, the City was notified by the Environmental Protection Agency ("EPA") and DHS of public hearings and other developments in the permitting process and the City did, in fact, express its health concerns at times. Nevertheless, the City chose not to utilize established mechanisms for challenging the environmental impact findings of the state and federal agencies.

back for further, meaningful consideration, the City has effectively foreclosed that option by finding that the Ogden project is simply inappropriate at its present location and will never be permitted in the SR Zone. Instead, the City has hastily adopted another ordinance which would give it the authority to conditionally permit the project in agricultural or manufacturing zones, although the new ordinance by no means guarantees that Ogden will ultimately be successful in obtaining a use permit in one of these zones. Given the timing of this action, it reasonably appears that the emergency ordinance is designed to avoid the charge that the City has simply prohibited the Ogden project from locating anywhere within City boundaries, a prohibition that would clearly contradict this court's previous interpretation of federal law.

Ogden argues that the City's most recent actions are simply a further manifestation of the City Council's intent to prohibit the project. Without delving into the Council's intent and for the reasons discussed below, the court finds that the City's course of conduct over at least the last three years has effectively resulted in a *de facto* ban on the hazardous waste incinerator.

## II. *De Facto Prohibition of the Ogden Project*

As extensively discussed in the May 11 order, GA Technologies, Ogden's predecessor-in-interest and the owner of the property on which the incinerator is located, developed the Circulating Bed Combustor technology at the Torrey Pines Mesa site and began applying for permits to perform demonstration test burns of hazardous wastes in July 1985. The facility is located in an SR Zone, which was adopted in 1964 to replace the conditional use permit requirements for the area and instead provides for specific permitted uses, including scientific and research activities and associated facilities or production of prototype products. *See* San Diego Municipal Code § 101.0434. The intent of the SR designation was "to encourage scientific research and development and to effect a high degree of compatibility of specialized uses which cannot be easily interspersed throughout the community." *Id.* § 101.0434(A). Manufacturing which is an accessory to and directly related to research activity or the production of prototype products or products requiring advanced technology and skill is expressly permitted. *Id.* § 101.0434(B). It appears that the intent of the City in creating this specialized zone was to attract "high tech" companies into the San Diego area. It also appears that the "scientific research" designation induced GA Technologies—and later Ogden—to develop the innovative and experimental Circulating Bed Combustor technology on a site within this zone.

As the state and federal permitting process proceeded through 1985 and 1986, the record reflects that the City was kept apprised of relevant developments and the general progress of the process. It agreed that the state should take the lead role in evaluating the environmental impacts of the project and in complying with the requirements of the California Environmental Quality Act. The City was given opportunities to provide input into the decision-making process. It never attempted to legally challenge the permit process or approval of the project by state and federal agencies. However, in late 1986, almost a year and a half after the permitting process began, the City chose to become directly involved by adopting the interim Conditional Use Permit Ordinance, authorizing the City Council to conditionally permit Resource Conservation and Recovery Act research, development, and demonstration projects in the SR Zone and other commercial hazardous waste facilities in agricultural and manufacturing zones. *See* San Diego Municipal Code § 101.0510(C)(4). The City reaffirmed this position in August 1987, when it adopted the permanent Conditional Use Permit Ordinance. The City recognized that the Ogden facility was the only research, development, and demonstration project currently affected by the ordinance, and in fact, Ogden immediately began the conditional use permit application process in late August 1987, relying on the Council's assurances that the application would be considered by both the Plan-

ning Department and the City Council by December 1987.

When the City ultimately denied the permit application in December, after a state court issued a preemptory writ of mandate requiring the City to meet this self-imposed deadline, it based its decision upon the unknown, potentially adverse impacts of the project on human health and the environment and upon unspecified adverse effects on the Community Plan. At no time did the City indicate that the project was simply incompatible with the SR Zone and would never be permitted at its present location.[4] In fact, the City expressly waived the one-year waiting period for reapplication. As noted in this court's previous ruling, the record reflects that the City was concerned that an environmental impact report had not been done, although the City had already waived any right to challenge the decision of the state agency, and that the Council wanted to have such a report done before any reapplication was considered. Thus, at the time of the first permit denial in December 1987, Ogden was actually encouraged by the City to expend more time and money in seeking local approval of the project at its present location in the SR Zone. After the December denial and during the several months that the case has been pending before this court, the Conditional Use Permit Ordinance, conditionally permitting Resource Conservation and Recovery Act research, development, and demonstration facilities in the SR Zone and apparently only in the SR Zone, remained in effect. It was not until this court's May 11 order forced the City to reconsider the Ogden application in light of its limited residual regulatory authority under the Resource Conservation and Recovery Act that the Council determined the project was inappropriate for the SR Zone, despite the language of the Conditional Use Permit Ordinance and the general purposes of the SR Zone as described in the local municipal code. Then, apparently recognizing that its decision might be construed as a *de jure* ban of the project from any location in San Diego in violation of the court's order, the City hastily adopted an emergency ordinance allowing the City to conditionally permit Resource Conservation and Recovery Act research, development and demonstration projects in agricultural and manufacturing zones. The City now argues that its finding that the project was incompatible with other uses in the SR Zone was a permissible local land use decision and that provision for the project in agricultural or manufacturing zones alleviates any concern that the City is attempting to prohibit such projects altogether.

In light of the City's conduct over the last three years, the court finds this argument unpersuasive as applied to the Ogden facility. In reliance on the purpose of and permitted uses in the SR Zone, plaintiff chose the present location of the incinerator to comply with local zoning laws and began the lengthy state and federal site-specific permitting process based upon its understanding that the facility was properly located within the SR Zone. The City affirmed this belief by its lack of participation in the early stages of the permitting process and later, by its codification of the fact that precisely this type of project could be conditionally permitted in the SR Zone. San Diego Municipal Code § 101.0510(c)(4). Thus, during the entire three-year permitting process, Ogden was led to believe, by the City's inaction and actions, that the project could be properly operated within the SR Zone. Then on June 13, 1988, the City simply reversed its position, finding,

4. Indeed, such a position would seem incompatible with the newly-adopted San Diego Municipal Code § 101.0510(C)(4), which provides in relevant part:

    The City Council shall have the authority, under conditions herein provided, to authorize by Conditional Use Permit the following uses in any zone including interim zones except as otherwise provided below:

    .     .     .     .     .

    j. Any facility, activity, or use of property in the scientific research (SR) Zone which is required by federal law to obtain a Research, Development and Demonstration Permit for Hazardous Waste Treatment from the Environmental Protection Waste Treatment from the Environmental Protection Agency or any other agency of the United States Government pursuant to the Federal Resource Conservation and Recovery Act.

without any new evidence before it, that the SR Zone was *never* intended to accommodate facilities, such as the Ogden project, which would have external effects.

The City now argues that this most recent decision is based upon a proper reading of the applicable zoning law. It points to Section 101.0434(E) of the San Diego Municipal Code which states that within the SR Zone, a permitted use shall not be permitted to produce, among other things, "objectionable air pollutants" and "emissions that endanger human health, cause damage to vegetation or property, or cause soiling" if they "emanate beyond the boundaries of the premises." The court notes that this section of the municipal code further states that:

> For the purposes of determining if phenomena are significant in the zone, the standards prescribed by regulations or [sic] the California Department of Public Health shall be taken into account.

*Id.* In light of the conclusion of the California Department of Health Services, successor to the Department of Public Health, that the Ogden project "will not have a deleterious effect on the environment," and in light of the City's continuing affirmation that the project could be located in the SR Zone, Ogden reasonably believed that its project, which had been found by state and federal authorities to adequately protect human health and the environment, complied with the requirements of the SR Zone. Yet on June 13, 1988, the City suddenly found that the project is incompatible with the SR Zone based upon the unsupported conclusion that it will have adverse external effects not contemplated by the zoning law.

Ogden argues that the City's actions have resulted in a *de facto* prohibition of the project because moving the facility to another location would necessitate starting the state and federal, not to mention the local, permitting processes all over again. It argues that this prospect might destroy the economic viability of the project and, at the very least, would certainly frustrate the congressional intent to provide expedited permitting for this type of project, as extensively discussed in the May 11 order. In support of this argument, Ogden points out that the five permits it currently holds on the project are site-specific and that time is currently running on the five-year EPA permit. The declaration of Ogden's executive vice president Brian Baxter states that the prospect of repermitting places the viability of the project in jeopardy. Most significantly, Ogden has submitted the declaration of Alex Cunningham, chief deputy director for the Toxic Substances Control Division of the California Department of Health Services, in which he states that:

> [M]oving of the facility to another location would require a new, comprehensive permitting review of the proposed site. Such a review by DHS alone would require significant time (one to two years) to complete, thereby further delaying our state's efforts to develop and demonstrate new technologies for treating hazardous waste.

At oral argument, plaintiff also submitted a similar affidavit from Laura Yoshii, deputy director of the Toxic Division at EPA Region 9, in which she indicates that all research, development, and demonstration permits under the Resource Conservation and Recovery Act are site-specific and that any proposed relocation of the Ogden Project would necessitate a complete reevaluation of the environmental health and safety risks at the proposed alternative location.

Thus, plaintiff has submitted evidence which demonstrates that the City's conduct over the last few years and in particular over the last several months has substantially frustrated congressional intent to encourage the development of innovative hazardous waste treatment technologies under both the Resource Conservation and Recovery Act and Superfund and has created a *de facto* ban on this particular project. In essence, the City has already delayed this project for nearly a year since the original Conditional Use Permit Ordinance was adopted in August 1987. As noted in this court's previous ruling, in November 1987, the Superior Court ordered the City to act on the matter by the December 1, 1987

Council meeting. The City's subsequent denial of the permit application, which was held by this court to be improper, further delayed the project during the early months of 1988 while Ogden sought review of the City's conduct in this litigation. Now, in the wake of this court's May 11, 1988 order, the City's June 13, 1988 decision threatens to stall the project another one to two years after a new site has been selected, which in itself could take a considerable period of time. In short, the City's initial inaction and its later hasty actions since the issuance of the federal and state permits will impose a total delay of, at minimum, two to three years. There is no evidence before the court to controvert statements submitted by plaintiff that in light of the financial funds already expended on this project, such a lengthy delay will force the company to reevaluate the economic viability of the incinerator.

As extensively discussed in this court's prior ruling, Congress has clearly expressed its intent that projects such as Ogden's are a national priority and to be encouraged. The court is sensitive to the fact that the city has a role to play in permitting such projects. However, the City has never passed any standards or requirements by which such permits might be assessed, which was one of the court's concerns with the December 1987 denial of the project, and Ogden was never told what it had to do to obtain a permit. In May 1987, this court gave the City another opportunity to exercise its legitimate local authority. Instead, the City drafted an emergency ordinance substantially changing the applicable zoning law. This new ordinance again provides no standards or requirements by which such permit applications are to be assessed. While the court is mindful of the potential local government role in the decision-making process, the doctrine of federal supremacy prohibits this role from being used to frustrate or subvert congressional intent.

In response to the evidence proffered by plaintiff, the City argues that the primary focus of both the federal and state review proceedings was on the technology of the facility, and not its location. It points out that the EPA has authority to modify the permit and "submits" that "the EPA would be hard pressed to deny site modification as a matter of course if plaintiff were required to relocate to a less dense or more remote area." (Defendant's Opposition at 13). However, defendants offer no evidence to refute the statements of Alex Cunningham that repermitting would require an additional one to two years, at least at the state level, a statement that is particularly credible in light of the very site-specific review performed by the state under the California Environmental Quality Act and the requirement under the statute for public notice, comment, and hearings. Nor have defendants controverted similar statements by Laura Yoshii about the federal permitting process. Since the City has not met its burden of coming forward with specific evidence which shows there is a genuine issue of fact on the question of whether the City's conduct has substantially frustrated congressional intent by creating a *de facto* ban on the Ogden project, summary judgment is appropriate under *Celotex v. Catrett*, 477 U.S. 317, 322–324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

Ogden requests that this court grant summary judgment on its thirteenth cause of action for injunctive relief by preliminarily and permanently enjoining the City from enforcing its conditional use permit authority against its hazardous waste incinerator as currently located in the SR Zone. Injunctive relief is appropriate to prevent a continuing violation of law, *Zepeda v. United States Immigration & Naturalization Service*, 753 F.2d 719, 725 (9th Cir.1983), and has been granted by the courts to prohibit the enforcement of local ordinances which are preempted by federal hazardous waste law. *See Ensco, supra; Rollins Environmental Services, supra.* Because I find that the City has used its Conditional Use Permit Ordinance to create a *de facto* ban of the Ogden project, IT IS HEREBY ORDERED that plaintiff's motion for summary judgment on its thirteenth cause of action is granted. Accordingly, the City is preliminarily and perma-

**1230**

nently enjoined from enforcing against plaintiff its ordinance requiring a conditional use permit for the operation of Ogden's Circulating Bed Combustor project at the Torrey Pines Mesa site.