[No. B055984. Second Dist., Div. One. June 30, 1992.]

BAM, INC., Petitioner and Appellant, v.
BOARD OF POLICE COMMISSIONERS OF THE CITY OF LOS
ANGELES, Defendant and Respondent.

## COUNSEL

Roger Jon Diamond, for Petitioner and Appellant.

James K. Hahn, City Attorney, Linda K. Lefkowitz and Byron R. Boeckman, Assistant City Attorneys, for Defendant and Respondent.

---

## OPINION

VOGEL, J.—The Board of Police Commissioners of the City of Los Angeles suspended Bam, Inc.'s permit to operate "Adult World," Bam's motion picture arcade. Bam's challenge to the suspension order by way of a petition for writ of mandate was denied and Bam appeals. We reverse and remand with directions.

### FACTS

Bam operates a motion picture arcade pursuant to a permit issued by the Board. (Los Angeles Mun. Code, § 103.101(b).)[1] In 1988 and 1989, the Los Angeles Police Department filed accusations for revocation of Bam's police permit, charging Bam with 33 counts of operating its arcade in a manner which allowed customers to masturbate in the arcade's viewing booths and one count of operating its premises in a manner which impaired visibility of the interior of its viewing booths from outside the booths. (§§ 103.101(e)(2) and 103.101(i).)

A Board-appointed hearing examiner reviewed the accusations, found insufficient evidence to sustain any of the 33 charges that Bam had allowed customers to masturbate, found the evidence was sufficient to sustain the lack of visibility charge but, notwithstanding the latter finding, concluded there was no basis for imposing a penalty because the deficiency had been corrected. Based on these findings (as detailed in an eight-page report discussed at length below), the examiner recommended that the Board deny the Department's request to revoke Bam's permit. Apparently dissatisfied, the Department filed "exceptions" to the examiner's report and recommended a 30-day suspension of Bam's permit.

After reviewing the evidence and the examiner's report, the Board perfunctorily rejected the examiner's findings and recommendations, refused to discuss Bam's request for imposition of a fine in lieu of suspension, and suspended Bam's permit for 30 days. Bam requested findings and the Board directed their preparation and submission to Bam's attorney for approval.

---

[1]Unless otherwise stated, all section references are to the Los Angeles Municipal Code.

Section 103.101 requires motion picture arcades to have permits, sets forth the rules governing arcade operations and establishes disciplinary procedures for violations of those rules.

But before this was done, the Board issued its decision and only later did Bam's counsel receive the proposed findings (to which he objected on the ground the findings should have been prepared and considered by the Board prior to the issuance of its decision).[2]

Bam filed a petition for writ of administrative mandate (Code Civ. Proc., § 1094.5) challenging the Board's decision on various grounds. The trial court denied the petition and this appeal followed.

## DISCUSSION

■ Bam contends the trial court should have granted its petition and sent the matter back to the Board because findings were never made. At the hearing, the Board agreed that Bam had a right to have findings prepared (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506, 509-510 [113 Cal.Rptr. 836, 522 P.2d 12]) but it now contends Bam waived that right by refusing to participate in their preparation. We agree with Bam.

■ Findings are not supposed to be a post hoc rationalization for a decision already made. To the contrary, they are supposed to "conduce the administrative body to draw legally relevant sub-conclusions supportive of [the Board's] ultimate decision; the intended effect is to facilitate orderly analysis and minimize the likelihood that the agency will randomly leap from evidence to conclusions." (11 Cal.3d at p. 516.)

■ Application of this rule to the facts of this case is not an elevation of form over substance. Indeed, it is in this context—where the decision of the hearing examiner is rejected—that findings by the Board are critical. Had the Board simply adopted the examiner's recommendation, we would have no problem deeming the examiner's findings to be those of the Board. But where, as here, the Board rejects those findings, notwithstanding that it did not hear or see the witnesses, the reviewing court has to be told why that was done, so it can "trace and examine the agency's mode of analysis." (11 Cal.3d at p. 516.)

We are at a loss to understand why the Board did what it did. At the hearing before the examiner, the Department presented arrest reports for all of the masturbating patrons and an inspection report documenting poor booth visibility. Bam agreed that if the arresting and inspecting police officers were called as witnesses, they would attest to the observations

[2]The hearing before the Board was on September 11, 1990. The Board issued its decision on September 12. Proposed findings were submitted to Bam's attorney on September 14. Final findings were never adopted by the Board.

contained in the reports. But Bam did not agree that any of the arrests led to convictions and Bernard Green, Bam's owner, testified about his extensive efforts to comply with the conditions of his permit. According to Green, many if not all of the arrests were unjustified and the hearing examiner specifically found that at least one of the men was acquitted following a jury trial.

Clerks patrol the arcade every two or three minutes and eject customers who are discovered masturbating. In the words of the hearing examiner, the Department did "not dispute that Bam has been cooperative in its efforts to police Adult World. It agreed that Bam implemented every suggestion it made to alleviate the problems discovered during police inspections." Indeed, the examiner found that "[m]any of the prevention measures [Bam] has adopted are not required by the arcade regulations." Green has installed a video camera for further monitoring and, "[o]n his own initiative, Green posted large signs in each booth and along the hallway stating in English and Spanish that public masturbation is unlawful."

When the police enter the arcade, Bam's employees must stop their patrolling. On at least one occasion, one of Bam's employees was arrested for patrolling the arcade while officers were present. Although the case was ultimately dismissed, Green has been told by the Department that his employees cannot patrol when police officers are present.[3]

Insofar as the "poor visibility" charge was concerned, the hearing examiner found the problem was that the "fisheye" mirrors originally used by Bam were mobile and the patrons would move them so the clerks (and police) could not see the interiors of the booths from the hallway. "Shortly after the poor visibility report, Green had the mirrors readjusted and set on stationary mounts. He adjusted the mirrors specifically to meet the suggestions of Departmental inspectors." Since that time, the inspectors have confirmed that the mirrors fully comply with the rules.

Based upon these factual findings, the hearing examiner recommended "that all of the charges claiming that [Bam] operated [its] business in a manner allowing customers to masturbate be dismissed. The Department has presented insufficient evidence that [Bam] did something or failed to act in some way which encourages, entices, assists or permits customers to masturbate. To the contrary, the evidence suggests that Bam was cooperative

---

[3]Uncontroverted evidence established that between 250 and 275 people use the arcade each day. The 33 arrests for masturbating occurred over a period of 8 months. Assuming a 5-day week, this means there were at least 43,200 people using the arcade during the period the 33 arrests were made.

with the Department and implemented all of the recommendations it proposed. [Bam] went beyond the arcade requirements in attempting to discourage patrons from masturbating and established clerk patrols, installed a video monitor and posted prominent signs. Bam also calibrated its fisheye mirrors to Departmental specifications, cooperated with the Department's enforcement efforts and maintained the premises in compliance with the arcade regulations.

"Bam is in the business of showing X-rated videos in token-operated booths. Because of the nature of the material some customers will invariably attempt to masturbate while watching the videos. As one patron stated during his arrest for lewd conduct: 'I thought that this is what these places are for. . . .'

"There is only so much a business owner can do to prevent members of the public from masturbating at these arcades. When asked what, if any, conditions the Department might suggest if conditional maintenance of the permit were to be recommended, the Department proposed a security guard and increased illumination. These suggestions illustrate the fact that Bam is doing all it can do to prevent patrons from masturbating.

"Bam does not need a security guard. It already has a clerk who periodically patrols the premises and observes whether customers are masturbating inside the booths. There is no indication that a uniformed guard would be an added deterrent.

"Bam also does not need increased illumination. All of the arrest reports extol the ease with which a hallway observer can view the activities of a customer in a booth. Numerous reports conclude that, given these conditions, a customer in a booth could not have any expectation of privacy. There is no indication that additional illumination would daunt masturbators or enhance enforcement.

"The Department has been unable to point to any act or failure to act committed by [Bam] which allowed patrons to masturbate. The evidence shows that Bam is permitted to screen X-rated movies by the City and is in compliance with all applicable arcade regulations. It has cooperated with the police and instituted measures such as regular patrols and prominent signs even though they are not required. The Department cannot revoke Bam's license merely because it cannot control its patrons at all times, only if it acts or fails to act in a manner which allows customers to masturbate. There is no evidence that this is the case at Adult World."

Confronted with this report and the examiner's recommendations, the Board offered nary a word of explanation for rejecting its own examiner's

findings. Reference to the Department's "exceptions" adds nothing. The Department's position was that "[e]ven where a permittee's best efforts are expended and are shown to be insufficient, the Board still retains grounds upon which to impose discipline." Not surprisingly, the Department offered no authority for this view. (Compare § 103.101(e)(2) [suspension authorized if "the evidence presented establishes that . . . [t]he permittee [or its employee] has knowingly allowed or permitted any act of . . . masturbation[] to be committed in this subject picture arcade . . ."].) There was no evidence that Bam "knowingly allowed or permitted" any improper conduct.

If ever a case cried out for findings, this is it.[4]

## DISPOSITION

The judgment is reversed, and the matter is remanded to the trial court with directions to issue a writ of mandate directing the Board to vacate its order of suspension and, if it intends to proceed further with this matter, to make findings prior to issuing a new order. Bam is to recover its costs on appeal.

Spencer, P. J., and Ortega, J., concurred.

---

[4] The Board's "waiver" argument is specious and the Board offers no authority or explanation for how it is that Bam could waive something which had already been taken away from it—the Board filed its decision before the Board's attorney submitted the findings to Bam's attorney. Nothing Bam could have done would have corrected the improper sequence of events. As Bam's attorney noted in his objections to the tardy findings, "the tribunal is supposed to find the facts and then draw conclusions from those facts. In this case, the Board has decided the outcome. Now it wants to make factual findings to support its conclusion. I am afraid the Commission has it backwards."