[No. C068120. Third Dist. Oct. 24, 2012.]

DAVE SINGH, Plaintiff and Respondent, v.
JEFF DAVI, as Real Estate Commissioner, etc., Defendant and Appellant.

[black redaction bar]

[black redaction bars]

### COUNSEL

Kamala D. Harris, Attorney General, William L. Carter and Amy J. Winn, Deputy Attorneys General, for Defendant and Appellant.

Frank M. Buda for Plaintiff and Respondent.

### OPINION

**DUARTE, J.**—Jeff Davi, as Commissioner (Commissioner) of the Department of Real Estate (DRE), denied Dave Singh's application for a real estate broker's license based on the "dishonest nature" of his prior conviction for theft by false pretenses and the concern that it would not be in the public interest to issue Singh a license. Singh petitioned for a writ of administrative mandamus (Code Civ. Proc., § 1094.5) to set aside the Commissioner's decision, contending that he was entitled to a broker's license because he had met all criteria for rehabilitation. Finding the Commissioner failed to proceed in the manner required by law, the trial court granted the petition and issued the writ of mandate.

The Commissioner appeals. He contends the trial court erred in interpreting his decision as finding that Singh met all criteria of rehabilitation. He further contends there is substantial evidence that Singh has not demonstrated a sufficient change in attitude because he fails to take full responsibility for his crime. We agree with the trial court that, based on the findings set forth in the decision, the Commissioner's decision to deny Singh a broker's license was improperly based solely on the nature of his prior crime, rather than his inadequate rehabilitation. Accordingly, we shall affirm.

## BACKGROUND

*Singh's Crime*

Singh was born in India and became a naturalized American citizen in 1986, when he was 21 years old.[1] From 1997 until 2004, he was a police officer who received numerous commendations. The last four years he was a detective. Prior to his police work, Singh worked with the FBI in counterintelligence.

In 2001, Singh lived with his extended family, including his wife and children, his father and mother, his brother Jasmer, and Jasmer's wife and children. Singh is fluent in both English and Punjabi and translated for his family, many of whom did not speak English. Singh's father, Sarbjit, was 70 years old and disabled. Jasmer is mentally handicapped and has problems with numbers; his wife estimated his mental capacity as that of a five or 10 year old.

Singh learned that IHSS (In-Home Supportive Services) provided services that allowed disabled persons to remain in their homes with family members providing assistance. Singh's wife initiated the process to obtain these benefits for Sarbjit. IHSS made payments to Sarbjit, who, in turn, paid Jasmer to provide him assistance with bathing, dressing and other needs.

In October of 2001, Sarbjit and his wife went to India and ended up staying three months after Sarbjit suffered a stroke. Sarbjit continued to receive IHSS payments during that time period.

After a fraud investigation, Singh, Sarbjit, and Jasmer were charged with presentation of a fraudulent claim (Pen. Code, § 72) and grand theft by false pretenses (Pen. Code, § 487, subd. (b)). The jury convicted Singh of grand theft, but acquitted him of presenting a fraudulent claim.[2] The trial court reduced the offense to a misdemeanor and granted Singh three years of probation. Singh lost his job as a police officer as a result of the conviction.

Singh appealed his conviction, raising insufficient evidence, instructional error, and other errors. The Fifth Appellate District affirmed the conviction.

Singh's probation was terminated in January 2007. His conviction was subsequently expunged under Penal Code section 1203.4.

---

[1] Singh's birth name was Chandanroop Singh Sidhu. Many of his family retain the Sidhu surname. For ease of reference, we refer to other members of the Singh/Sidhu family by their first names.

[2] Sarbjit was also convicted; Jasmer was acquitted.

*Applications for a Broker's License*

In 2006, Singh filed an application for a real estate broker's license with the DRE. The Commissioner denied the application the following year. The decision found that Singh was not sufficiently rehabilitated. Because he continued to deny responsibility for his crime, he did not have the necessary change of attitude.

In late 2008, Singh again applied for a license as a real estate broker. Singh provided the DRE with an explanation of the details of his crime, in which he stated he "was convicted, because in the words of the prosecutor I criminally facilitated this in that I was the head of the household and therefore must have condoned the action."

The DRE filed a statement of issues in opposition to Singh's application. The DRE stated that Singh's misdemeanor conviction and his prior license denial constituted cause for denial of his application under Business and Professions Code sections 480, subdivision (a) and 10177, subdivisions (b) and (f).[3]

*The Hearing*

A hearing was held before an administrative law judge (ALJ). Only Singh called witnesses. Four witnesses testified to Singh's good character and in support of his application. Three were law enforcement officers who had worked with Singh: a police officer whom Singh had mentored, a retired FBI agent, and a police detective. The fourth witness was Singh's wife, who testified Singh was "a wonderful husband" and a "very good father." She claimed that Singh never lost his positive attitude. All these witnesses were aware of his prior conviction, although the retired FBI agent, who observed most of the trial, could not understand how the jury reached its verdict. These witnesses and others provided letters in support of Singh's application.

At the time of the hearing, Singh worked at Mosqueda Farm Labor, supervising over 400 employees. His previous job was as a dispatcher for a trucking company. Singh had taken several real estate courses.

Singh presented testimony and documentary evidence of his community activities. He was active in the Sikh temple, helping in the community

---

[3] Business and Professions Code section 10177, subdivision (f) provides that an application for a real estate license may be denied where the person has previously been denied a license. The DRE relied on the 2007 license denial. The DRE later withdrew this basis for denying Singh's application. The other two statutory provisions relate to criminal convictions and are discussed *post*.

kitchen and with security and fundraising. He volunteered at his children's school. Singh had a 200-hour community service requirement due to his conviction. He exceeded that requirement, working 233 hours to start a program at Kirk Elementary School in Fresno for students with conduct problems. The program was successful and the school continued it. Singh paid his $120 in fines and he and his father made full restitution.

Singh testified that he was aware that his father continued to receive IHSS payments while in India even though Jasmer was not providing any services. Singh's "biggest regret" was that he did not take any steps to stop it; otherwise "I would not have suffered the last six years." It was "absolutely wrong" not to take action to stop the payments; as a police officer, he should have done so. He accepted responsibility for Sarbjit's receiving money while in India.

### The Decision

The ALJ's decision denied Singh's application for a real estate broker's license. As discussed in more detail *post*, the ALJ found that Singh had "complied with many of the rehabilitation criteria." Notwithstanding this rehabilitation, the ALJ found that "it would not be in the public interest to issue a broker license" to Singh "given the dishonest nature of his conviction." The rehabilitation evidence "was not sufficient to support issuance of a real estate broker license" "[g]iven the dishonest nature of [Singh's] crime."

The Commissioner adopted the ALJ's decision, correcting it only to show that a legal intern had also appeared on behalf of the DRE.

### Writ of Mandate

Singh petitioned for a writ of mandate to set aside the Commissioner's decision. Singh argued the Commissioner's decision was invalid; he contended that the Commissioner abused his discretion because the Commissioner could not legally deny Singh a real estate broker's license because of his conviction where Singh had complied with all applicable criteria of rehabilitation.

The trial court granted the petition and issued the writ.

## DISCUSSION

### I

*Standard of Review*

"Section 1094.5 of the Code of Civil Procedure provides the basic framework by which an aggrieved party to an administrative proceeding may seek judicial review of any final order or decision rendered by a state or local agency." (*Bixby v. Pierno* (1971) 4 Cal.3d 130, 137 [93 Cal.Rptr. 234, 481 P.2d 242], fn. omitted (*Bixby*).)[4] "In reviewing administrative proceedings under section 1094.5 that do not affect a fundamental right, such as an attempt to obtain a license to engage in a profession or business, the trial court reviews the whole administrative record to determine whether the findings are supported by substantial evidence and whether the agency committed any errors of law. [Citations.]" (*Donley v. Davi* (2009) 180 Cal.App.4th 447, 455–456 [103 Cal.Rptr.3d 1] (*Donley*).) "Our scope of review on appeal from such a judgment is identical to that of the trial court." (*Bixby, supra,* 4 Cal.3d at p. 149.)

Our review focuses on the agency's findings and decision, rather than merely reviewing the evidence in the record to find substantial evidence to support the decision. "Section 1094.5 clearly contemplates that at minimum, the reviewing court must determine both whether substantial evidence supports the administrative agency's findings and whether the findings support the agency's decision. Subdivision (b) of section 1094.5 prescribes that when petitioned for a writ of mandamus, a court's inquiry should extend, among other issues, to whether 'there was any prejudicial abuse of discretion.' Subdivision (b) then defines 'abuse of discretion' to include instances in which the administrative order or decision 'is not supported by the findings, *or* the findings are not supported by the evidence.' (Italics added.)" (*Topanga Assn. for a Scenic Community v. County of Los Angeles* (1974) 11 Cal.3d 506, 514–515 [113 Cal.Rptr. 836, 522 P.2d 12] (*Topanga Assn.*).) "[I]mplicit in section 1094.5 is a requirement that the agency which renders the challenged decision must set forth findings to bridge the analytic gap between the raw evidence and ultimate decision or order. If the Legislature had desired otherwise, it could have declared as a possible basis for issuing mandamus the absence of substantial evidence to support the administrative agency's

---

[4] "The inquiry in such a case shall extend to the questions whether the respondent has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." (Code Civ. Proc., § 1094.5 (section 1094.5), subd. (b).)

action. By focusing, instead, upon the relationships between evidence and findings and between findings and ultimate action, the Legislature sought to direct the reviewing court's attention to the analytic route the administrative agency traveled from evidence to action." (*Topanga Assn., supra*, 11 Cal.3d at p. 515.)

II

*Rehabilitation*

■ The Commissioner may deny issuance of a license to an applicant who has been convicted of a felony or a crime substantially related to the qualifications, functions, or duties of a real estate licensee. (Bus. & Prof. Code, § 10177, subd. (b); see Bus. & Prof. Code, § 480, subd. (a)(1) [generally permitting a board to deny a license where applicant has been convicted of a crime].)

Subdivision (b) of Business and Professions Code section 480, however, provides: "Notwithstanding any other provision of this code, no person shall be denied a license solely on the basis that he or she has been convicted of a felony if he or she has obtained a certificate of rehabilitation under Chapter 3.5 (commencing with Section 4852.01) of Title 6 of Part 3 of the Penal Code or that he or she has been convicted of a misdemeanor if he or she has met all applicable requirements of the criteria of rehabilitation developed by the board to evaluate the rehabilitation of a person when considering the denial of a license under subdivision (a) of Section 482." This general prohibition prevails over the sections of the Business and Professions Code that prescribe licensing requirements for a particular business or professional license. (Bus. & Prof. Code, § 475; *Pieri v. Fox* (1979) 96 Cal.App.3d 802, 805–806 [158 Cal.Rptr. 256].)

■ The DRE has developed 14 criteria to be used to evaluate rehabilitation of an applicant for a license who has committed a crime.[5] (Cal. Code

---

[5] "The following criteria have been developed by the department pursuant to Section 482(a) of the Business and Professions Code for the purpose of evaluating the rehabilitation of an applicant for issuance or for reinstatement of a license in considering whether or not to deny the issuance or reinstatement on account of a crime or act committed by the applicant: [¶] (a) The passage of not less than two years since the most recent criminal conviction or act of the applicant that is a basis to deny the departmental action sought. (A longer period will be required if there is a history of acts or conduct substantially related to the qualifications, functions or duties of a licensee of the department.) [¶] (b) Restitution to any person who has suffered monetary losses through 'substantially related' acts or omissions of the applicant. [¶] (c) Expungement of criminal convictions resulting from immoral or antisocial acts. [¶] (d) Expungement or discontinuance of a requirement of registration pursuant to the provisions of Section 290 of the Penal Code. [¶] (e) Successful completion or early discharge from probation

Regs., tit. 10, § 2911 (section 2911).) These criteria attempt to gauge whether the applicant has changed so that a repeat of his criminal behavior is unlikely. Of the many criteria, arguably the most important in predicting future conduct is section 2911, subdivision (n): "Change in attitude from that which existed at the time of the conduct in question." The Commissioner contends there is substantial evidence that Singh has failed to show a change of attitude sufficient for full rehabilitation, so it was proper to deny his license application.

## III

### *Prejudicial Abuse of Discretion*

The ALJ found: "15. Respondent has complied with many of the rehabilitation criteria set forth in California Code of Regulations, title 10, section 2911. It has been more than two years since his conviction. He has paid restitution to the IHSS. His conviction has been expunged. He successfully completed his probation. He paid all the fines and fees imposed in connection with his conviction. He has a stable family life and is fulfilling his parental and familial responsibilities. He has significant and conscientious involvement in his community and temple. The testimony and letters from his family members and friends were positive and supportive. Respondent assumed

---

or parole. [¶] (f) Abstinence from the use of controlled substances or alcohol for not less than two years if the conduct which is the basis to deny the departmental action sought is attributable in part to the use of controlled substances or alcohol. [¶] (g) Payment of the fine or other monetary penalty imposed in connection with a criminal conviction or quasi-criminal judgment. [¶] (h) Stability of family life and fulfillment of parental and familial responsibilities subsequent to the conviction or conduct that is the basis for denial of the agency action sought. [¶] (i) Completion of, or sustained enrollment in, formal education or vocational training courses for economic self-improvement. [¶] (j) Discharge of, or bona fide efforts toward discharging, adjudicated debts or monetary obligations to others. [¶] (k) Correction of business practices resulting in injury to others or with the potential to cause such injury. [¶] (l) Significant or conscientious involvement in community, church or privately-sponsored programs designed to provide social benefits or to ameliorate social problems. [¶] (m) New and different social and business relationships from those which existed at the time of the conduct that is the basis for denial of the departmental action sought. [¶] (n) Change in attitude from that which existed at the time of the conduct in question as evidenced by any or all of the following: [¶] (1) Testimony of applicant. [¶] (2) Evidence from family members, friends or other persons familiar with applicant's previous conduct and with his subsequent attitudes and behavioral patterns. [¶] (3) Evidence from probation or parole officers or law enforcement officials competent to testify as to applicant's social adjustments. [¶] (4) Evidence from psychiatrists or other persons competent to testify with regard to neuropsychiatric or emotional disturbances. [¶] (5) Absence of subsequent felony or misdemeanor convictions that are reflective of an inability to conform to societal rules when considered in light of the conduct in question." (Cal. Code Regs., tit. 10, § 2911.)

more responsibility and exhibited more remorse for his conviction at the current hearing than he did at the previous hearing.

"16. Notwithstanding the rehabilitation in which respondent has engaged, it would not be in the public interest to issue a broker license to him at this time. Five years ago respondent was convicted of a crime involving dishonesty and a violation of the public trust. That crime included the illegal taking of monies from a public entity while respondent was a police officer sworn to uphold the law. A broker is authorized to work independently, without any supervision. While respondent might be a good candidate for a restricted real estate salesperson license with appropriate terms and conditions if he worked under the supervision of a licensed broker, given the dishonest nature of his conviction, allowing him to start his real estate career as an unsupervised broker would not be consistent with the public interest, safety or welfare. Respondent's application must therefore be denied."

The ALJ's legal conclusions ended with: "5. As set forth in Findings 15 and 16, while the rehabilitation evidence that respondent offered might be adequate to support the issuance of a restricted real estate salesperson license, it was not sufficient to support issuance of a real estate broker license, even with restrictions. Given the dishonest nature of the crime underlying respondent's conviction, in order to protect the public interest, safety and welfare, respondent should not be allowed to begin working at the level of the real estate broker without appropriate supervision. Respondent's application for a real estate broker license must therefore be denied."

The Commissioner adopted the ALJ's decision, without change as to the factual findings or legal conclusions.

The Commissioner contends the trial court erred in finding an abuse of discretion because the findings support the decision. (§ 1094.5, subd. (b).) The Commissioner contends the trial court erred in interpreting the findings. He asserts that the findings show that Singh had met only *many* of the criteria of rehabilitation, not *all* of them. While the decision did not explicitly mention Singh's change in attitude, the Commissioner argues that it did *discuss* Singh's attitude, and that discussion shows his change in attitude was incomplete. Thus, the Commissioner concludes, Singh had not met *all* the criteria for rehabilitation, there was no violation of subdivision (b) of Business and Professions Code section 480, the decision denying Singh's license application must be affirmed, and the judgment of the trial court must be reversed.

As we have just described, the Commissioner's contention is premised upon the assertion that the ALJ made, and the Commissioner adopted, the finding that Singh had not demonstrated a sufficient change in attitude to satisfy the criteria of rehabilitation. But the ALJ made no such finding. The ALJ found Singh had assumed more responsibility and exhibited more remorse than in prior proceedings, and the testimony and letters from friends and family were positive and supportive. These findings address change of attitude under section 2911, subdivision (n).

The ALJ's decision did not distinguish, on the basis of sufficiency, between its findings pertaining to change of attitude and those pertaining to other section 2911 criteria that were clearly met, such as the passage of time, expungement of the conviction, and payment of fines and restitution. Nothing in the findings supports the view that the ALJ found Singh failed to meet any of the applicable criteria set forth in section 2911.[6]

These findings stand in sharp contrast to those in *Donley, supra,* 180 Cal.App.4th 447. In *Donley,* the applicant for an unqualified real estate salesperson license, who had a misdemeanor conviction for willful infliction of corporal injury on a cohabitant, was issued only a restricted license and petitioned for a writ of mandate. The petition was denied and this court affirmed. (*Donley, supra,* at p. 451.) The Commissioner found inconsistencies between what the applicant told the police and what he disclosed to the DRE; " 'the overall impression is that [Donley] has not yet fully acknowledged the full nature and extent of his actions.' " (*Id.* at p. 467.) The Commissioner further found that the applicant " 'is partially rehabilitated . . . . As set forth above, there are significant indications in this record that [Donley] has not yet fully accepted the full import of his actions and the potential for harm his behavior risked.' " (*Ibid.*) This court concluded substantial evidence supported "the Commissioner's findings and implicit conclusion that Donley did not show the requisite '[c]hange in attitude' " under section 2911, subdivision (n). (180 Cal.App.4th at p. 466.)

Here, the ALJ found Singh "assumed more responsibility and exhibited more remorse" than he had previously. While this finding *could* lead to the conclusion that "more" was not enough, neither the ALJ nor the Commissioner expressed that conclusion. It is not sufficient that there is substantial evidence to support the decision. There must be a factual finding—supported

---

[6] Obviously, some of the section 2911 criteria, such as expungement of a registration requirement (§ 2911, subd. (d)) or abstinence from controlled substances or alcohol (§ 2911, subd. (f)), were inapplicable.

by substantial evidence—to support the decision. The factual finding must "bridge the analytic gap between the raw evidence and the ultimate decision or order." (*Topanga Assn., supra,* 11 Cal.3d at p. 515.) On review, our attention is directed "to the analytic route the administrative agency traveled from evidence to action." (*Ibid.*)

Here, the analytic route is clear. The ALJ did *not* find Singh's rehabilitation inadequate because he failed to fully satisfy the change of attitude or any other criteria of rehabilitation. Instead, the ALJ expressly found Singh's rehabilitation was inadequate "given the dishonest nature" of his crime and his status as a police officer at the time he committed the crime. The nature of the crime and the applicant's position as a peace officer are not among the criteria for rehabilitation established by the DRE.

The Commissioner contends a finding that Singh failed to show sufficient change in attitude, while not explicit, is necessarily implied from the decision. The Commissioner relies on the rule that an agency's decision is presumed correct. (*Patterson Flying Service v. Department of Pesticide Regulation* (2008) 161 Cal.App.4th 411, 419 [74 Cal.Rptr.3d 290].) The Commissioner argues that the sole issue before the ALJ was whether Singh was fully rehabilitated and change in attitude was the only applicable consideration that weighed against full rehabilitation.

 Although a finding may be implied from an agency's decision where it is the only finding that could have been made, the "rule of presumed findings will obviously not apply where the decision might be based on one or more of several theories, each relating to different factual considerations." (*Mahoney v. San Francisco City etc. Employees' Ret. Bd.* (1973) 30 Cal.App.3d 1, 5 [106 Cal.Rptr. 94].) Here, we need not guess on what theory the decision was based—the decision clearly states its basis. Both the factual findings and the legal conclusions state expressly that Singh's application must be denied to protect the public interest, safety and welfare "given the dishonest nature" of his crime. Change of attitude was not the basis for finding Singh's rehabilitation was insufficient. The ALJ, and the Commissioner by adopting the ALJ's decision, relied on improper grounds in denying Singh's application. Accordingly, the Commissioner "has not proceeded in the manner required by law" and the "decision is not supported by the findings," so there was a prejudicial abuse of discretion. (§ 1094.5, subd. (b).)

## DISPOSITION

The judgment is affirmed. Singh shall recover costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)

Raye, P. J., and Blease, J., concurred.