Filed 11/27/13

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----


| ELLEN FRYE et al.,<br><br>        Plaintiffs and Appellants,<br><br>    v.<br><br>COUNTY OF BUTTE et al.,<br><br>        Defendants and Appellants. | C069500<br><br>(Super.Ct.No. 148438) |
|---|---|
| ELLEN FRYE et al.,<br><br>        Plaintiffs and Appellants,<br><br>    v.<br><br>BUTTE COUNTY ANIMAL CONTROL et al.,<br><br>        Defendants and Respondents. | C070095<br><br>(Super.Ct.No. 153564) |

APPEAL from a judgment of the Superior Court of Butte County, Barbara L. Roberts and Sandra L. McLean, Judges. Dismissed and Affirmed.

Michael R. Bush, for Plaintiffs and Appellants.

Law Office of Deems & Keller, LLP, Michael R. Deems, and Bruce S. Alpert, for Defendants and Respondents.

In two cases, animal control officers seized horses they believed to be at risk. The proceedings leading to the consolidated appeals now before us are convoluted.

1

Penal Code section 597.1 (§ 597.1) provides: "When [an animal control] officer has reasonable grounds to believe that very prompt action is required to protect the health or safety of the animal or the health or safety of others, the officer shall immediately seize the animal and comply with subdivision (f) [providing for a *post*-seizure hearing]. In all other cases, the officer shall comply with the provisions of subdivision (g) [providing for notice in lieu of seizure, and a *pre*-seizure hearing]." (§ 597.1, subd. (a).)

"Penal Code section 597.1[fn.] is a self-contained regulatory scheme covering treatment of animals. It provides that the failure to provide animals with 'proper care and attention' is a misdemeanor. (Subd. (a).) It covers the authority of animal control officers over sick, injured, straying, or abandoned animals in nonemergency situations. It further provides that animals may be seized or impounded when such an officer 'has reasonable grounds to believe that very prompt action is required to protect the health or safety' of the animals. (Subds. (a) & (b).) . . . Animals that were 'properly seized' are to receive 'care and treatment,' the costs of which 'shall constitute a lien on the animal' that the owner must pay before the animal is returned. (Subds. (a) & (b).) The owner of a seized or impounded animal is entitled to 'a postseizure hearing to determine the validity of the seizure or impoundment,' return of the animals, and liability for costs. (Subds. (f) & (j).)" (*Broden v. Marin Humane Society* (1999) 70 Cal.App.4th 1212, 1216 (*Broden*).)

The County of Butte, acting via its animal control department (hereafter collectively "the County"), seized horses on separate occasions from plaintiffs Ellen Frye and Marlene Schultz (collectively "Frye" except as context otherwise indicates) and each sought a post-seizure hearing to contest the propriety of those seizures. Separate administrative hearing officers sustained the seizures in each case.

Frye then filed a mandamus petition (Butte Co. Super. Ct. No. 148438, the "first petition"). The trial court (Roberts, J., "the first trial court") issued a document captioned "Statement of Decision" holding that the administrative findings did not adequately justify the County's election of remedies, and remanding both cases for new

2

administrative hearings. Long after those new hearings were completed, the first trial court issued a document captioned "Judgment," from which the County appealed, and Frye cross-appealed.

In 3 Civil No. C069500, we hold the County's appeal and Frye's cross-appeal are untimely, because the "Statement of Decision" was a judgment, albeit a misleadingly-captioned judgment, and therefore the purported judgment arising much later out of the same case was a nullity and did not extend the time in which to file a notice of appeal. Accordingly, we dismiss the untimely appeal and cross-appeal from that purported judgment.

The new administrative hearings resulted in findings again sustaining the County's seizures of the horses. Frye filed a new mandamus petition challenging those findings (Butte Co. Super. Ct. No. 15364, the "second petition"), and filed a timely appeal (3 Civ. No. C070095) from the judgment denying that petition. We shall affirm that judgment.

## DISCUSSION

### I

#### *The First Petition*

A. *Procedural Background*

On February 25, 2010, Frye filed a second amended petition seeking a writ of administrative mandate and declaratory relief, later characterized by Frye as a "review" petition. Frye alleged various defects in the initial administrative hearings, including inadequate discovery, lack of neutral hearing officers, lack of evidence to support the decisions, and imposition of excessive administrative costs.

On September 28, 2010, the first trial court issued a document captioned as a "Statement of Decision" finding the administrative decisions were deficient because "the record is devoid of any findings . . . as to the proper procedure to be used, therefore these cases must be remanded . . . to first determine whether or not pre-seizure hearings should have been implemented before seizing the animals and proceeding with the post-seizure

3

hearing. To allow the agency to proceed with a post-seizure hearing only would deprive the party of any remedy to address whether a pre-seizure hearing would have been more appropriate in each circumstance. [¶] The cases are remanded to the agency to conduct a hearing on the proper procedure that should have been used in these cases."[1]

In November and December 2010, the respective hearing officers upheld the post-seizure process used by the County in each case, after the hearings on remand ordered by the trial court.

On January 24, 2011, the first trial court issued an order stating new administrative hearings had been conducted and if the parties wanted to challenge the new findings, they had to file a new petition that could be heard before a different judge.

On March 4, 2011, Frye filed an original petition for writ of mandate in this court (*Frye v. Superior Court*, 3 Civ. No. C067527), complaining that the first trial court "has refused to enter any judgment" in the matter.

On April 7, 2011, we disposed of Frye's original petition as follows:

> "Inasmuch as Code of Civil Procedure section 1094.5 does not permit remand before the writ issues, 'but instead specifies that the writ shall issue and the reviewing court may then remand' (*Sierra Club. v. Contra Costa County* (1992) 10 Cal.App.4th 1212, 1220-1221 [*Sierra Club*]), respondent court's inartfully worded Statement of Decision issued September 28, 2010, was in fact intended by respondent court as a final judgment setting aside the administrative decision and directing reconsideration of the matter as specified in the Statement of Decision. As a result, and as noted by respondent court in its order of January 24, 2011, any challenge to the most recent administrative decision must be based on a new petition for writ of mandate. Accordingly, the instant petition for writ of mandate is denied.

On April 15, 2011, Frye moved to have the first trial court enter a judgment commanding the County to set aside the first administrative decisions, compelling return

_____

[1] The record does not contain any objections to this "Statement of Decision."

4

of the horses, returning costs already paid for seizing and caring for Frye's horses, and awarding court costs. Frye's points and authorities acknowledged we had ruled that the first trial court had issued a final judgment, but argued further issues remained to be decided and therefore the "interlocutory order" was not a final judgment--in effect arguing to the trial court that *we* had erred and it should disregard our ruling. The County did not oppose entry of a final judgment, but sought a more limited judgment that merely remanded the matters for further hearings. Because those hearings had already taken place, the County argued the proper vehicle for Frye to obtain any additional relief was by filing a new petition for writ of mandate.

The first trial court signed a document captioned "Judgment" on August 22, 2011, issuing a writ of mandate commanding the agency to set aside the first administrative decisions, remanding for new hearings, and awarding Frye court costs "according to proof[.]" Notice of entry of this purported judgment was made on August 31, 2011.

On October 17, 2011, the County filed an appeal from that purported judgment. On October 28, 2011, Frye filed a cross-appeal from it.

B. *Timeliness of the Appeal*

The parties briefed the validity and adequacy of the purported judgment signed on August 22, 2011. We do not reach those issues here.[2] Instead, we resolve this appeal and cross-appeal based on supplemental briefing we ordered. We confirm our earlier view that the document captioned "Statement of Decision" filed on September 28, 2010 was "a final judgment" remanding for further administrative proceedings.[3] This triggered the time in which to file a notice of appeal, and the later document captioned as a

_____

[2] However, in considering the *second* appeal, 3 Civil No. C070095, *post*, we resolve one point also tendered by the untimely appeal in 3 Civil No. C069500.

[3] Our earlier order is not "law of the case," because we did not issue an alternative writ or create a "cause" in response to Frye's original petition in this court. (See *Kowis v. Howard* (1992) 3 Cal.4th 888.) Accordingly, we now must explain our reasoning.

5

"judgment" did not extend that time; it was a nullity. Because the notices of appeal and cross-appeal from that void judgment were untimely as measured from the date of the true--albeit miscaptioned-- judgment, this appeal must be dismissed.

    1. The "Statement of Decision" was a Final Judgment.

At the time the "Statement of Decision" was filed, a trial court could not issue an interlocutory administrative remand order. (See *Sierra Club, supra,* 10 Cal.App.4th at pp. 1220-1221; *Resource Defense Fund v. Local Agency Formation Com.* (1987) 191 Cal.App.3d 886, 898-890 (*Resource Defense Fund*).) Because we normally presume a trial court acts according to extant law (see *Ross v. Superior Court* (1977) 19 Cal.3d 913-914; *In re Fred J.* (1979) 89 Cal.App.3d 168, 175), we reasoned that the first trial court issued a final writ when we denied Frye's original petition.

As Frye emphasizes, several months *after* we denied Frye's original writ petition, our Supreme Court disapproved of the rule stated in *Sierra Club* and *Resource Defense Fund*, and held there was "no blanket prohibition on the appropriate use, in an administrative mandamus action, of a prejudgment remand for agency reconsideration of one or more issues pertinent to the agency's decision." (*Voice of the Wetlands v. State Water Resources Control Bd.* (2011) 52 Cal.4th 499, 528-529 (*Voice of the Wetlands*).) But this does not change the fact that, *at the time it acted*, the first trial court was bound to follow the prior rule (see *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 (*Auto Equity Sales*); 2 Witkin, Cal. Procedure (5th ed. 2008) Jurisdiction, § 297, pp. 908-909 (Witkin)), and therefore intended at that time that its "Statement of Decision" function as a final judgment, as we previously concluded, following then-extant law.[4]

_____

[4] Of course, the trial court's subjective intent does not control our interpretation of its actions. On the issues of the trial court's intent, Frye points to the appellate court decision in *Voice of the Wetlands*, claims this created a "split of authority," therefore the

6

Accordingly, we confirm the view we previously expressed in the prior original writ proceeding in this court, namely, that the document captioned as a "Statement of Decision" filed on September 28, 2010, was a final judgment.

Frye contends that the "Statement of Decision" did not resolve all of the pleaded issues between the parties, specifically, claims for "monetary damages" and return of the horses. Generally speaking, the County agrees. Frye argues that this, too, shows the "Statement of Decision" was not a judgment.

We disagree. As we explain, the "Statement of Decision" resolved all issues *necessary* to resolve at that time. It would have been premature to order return of the horses or restitution of amounts paid to the County to care for them, before the legality of the seizure had been determined via the new administrative hearings in the first instance.

Generally, "A judgment is the final determination of the rights of the parties in an action or proceeding." (Code Civ. Proc., § 577; see *Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 743-744 [no appeal from purported judgment that fails to dispose of all causes of action].) This case was not an action, but was a special proceeding. (Code Civ. Proc., §§ 21-23; see 3 Witkin, *supra*, Actions, § 65, p. 136.) However, the rule defining a judgment is the same: "A judgment in a special proceeding is the final determination of the rights of the parties therein." (Code Civ. Proc., § 1064.)

"It has been correctly stated that the general test for determining whether the judgment is final is 'that where no issue is left for future consideration except the fact of

first trial court was free to follow either line of cases (*Auto Equity Sales*, *supra*, 57 Cal.2d at p. 456), and did not necessarily intend its statement of decision to be a judgment. But our Supreme Court granted review in *Voice of the Wetlands* on March 19, 2008 (S160211) and the appellate court decision lost precedential value at that moment. (Cal. Rules of Court, rule 8.1105(e) ["an opinion is no longer considered published if the Supreme Court grants review"]; see *People v. Rogers* (1978) 21 Cal.3d 542, 547.) When the first trial court ruled, there was *no* split of authority. We note with disapproval that Frye also cited that already long-uncitable appellate decision to this court in Frye's March 4, 2011, original writ petition.

compliance or noncompliance with the terms of the first decree, that decree is final, but where anything further in the nature of judicial action on the part of the court is essential to a final determination of the rights of the parties, the decree is interlocutory.'" (*Meehan v. Hopps* (1955) 45 Cal.2d 213, 217; see *Dana Point Safe Harbor Collective v. Superior Court* (2010) 51 Cal.4th 1, 5; *People v. Whaley* (2008) 160 Cal.App.4th 779, 802.)

The first cause of action[5] in the first petition alleges the administrative hearing regarding the Frye seizure was invalid for various reasons. The second cause of action alleges the administrative hearing regarding the Schultz seizure was invalid for various reasons. The third cause of action sought a declaration regarding the validity of the County's practices regarding choosing a pre- as opposed to post-seizure remedy. The fourth cause of action sought a declaration that section 597.1 was unconstitutional on its face and as applied.

The judgment as set forth in the "Statement of Decision" ordered new administrative hearings to determine the validity of the County's exercise of discretion to elect between pre- and post-seizure remedies. The first trial court therefore agreed the first through third causes of action merited relief in the form of new administrative hearings. That judgment impliedly *rejected* the claim in the fourth cause of action that section 597.1 was *facially* unconstitutional, because the new hearings were designed in part to determine the lawfulness of the County's actions in these particular cases. Thus, the judgment adequately disposed of the first petition and Frye or the County could have appealed therefrom. (See *Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 697-700 [under "'one final judgment' rule," denial of petition for writ of mandate in a

_____

5  We use the term "cause of action" loosely, as did the petition, which blends causes of actions, legal theories, and remedies. (See *Grossmont Union High School Dist. v. State Dept. of Education* (2008) 169 Cal.App.4th 869, 881; *Walton v. Walton* (1995) 31 Cal.App.4th 277, 291.)

8

prior appeal effectively resolved claims seeking to declare a statute unconstitutional, to enjoin an administrative fine, and to prohibit future enforcement, and therefore was a final determination of the rights of the parties in the action, "because the superior court's ruling . . . disposed of all causes of action framed by the pleadings, leaving no substantive issue for future determination, it was an appealable judgment"].)[6]

Certain *remedies* sought by the first petition remained unresolved, but that is only because they were not yet *ripe*, pending the outcome of the new administrative hearings. Although Frye points to the alleged illegal retention of the horses and "money damages based on the [County's] improper charges," until new administrative hearings were completed, such remedies would be premature.[7] Therefore, by ordering new administrative hearings, the first trial court resolved all the issues in the petition that were proper to resolve at that time.[8]

_____

[6] Further: "When 'the trial court's failure to dispose of all causes of action results from inadvertence or mistake rather than an intention to retain the remaining causes of action for trial' [citation], the appellate court has discretion to 'preserve the appeal by amending the judgment to reflect the manifest intent of the trial court' [citations]." (*Sullivan v. Delta Air Lines, Inc.* (1997) 15 Cal.4th 288, 308.)

[7] Neither the first petition nor the proposed purported final judgment used the term "damages" but merely sought to prevent collection of or claim restitution for amounts allegedly paid to the County for the care of the horses. Although not explained by Frye, restitution can be viewed in some cases as a form of damages. (See *AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 826, fn. 11, 835-836.)

[8] One remedy sought was an order that the County "cancel" certain criminal proceedings and "[n]otify" the District Attorney that there was no basis for criminal prosecution, or issue an order to show cause why criminal proceedings should not be restrained. Frye does not explain how the first trial court could have granted such relief, and therefore we deem these claims abandoned. (See *Alameda County Flood Control & Water Conservations Dist. v. Department of Water Resources* (2013) 213 Cal.App.4th 1163, 1203, fn. 42 (*Alameda*).) Frye's petition also requested costs and fees, but those matters could have been resolved by post-judgment cost bill or, if necessary (e.g., to claim private attorney general fees under Code Civ. Proc., § 1021.5), a postjudgment motion. (See 3 Civ. Proc. During Trial (Cont.Ed.Bar 3d ed. 2011) Recovering Attorney Fees §§ 26.146-

2.  No Timely Appeal from the Judgment was Filed.

The County was clearly aggrieved by having to undergo new administrative hearings, and therefore could have appealed from the judgment ordering a remand.  (See 8 Witkin, *supra*, Extraordinary Writs, § 217, pp. 1122-1123.)[9]

The time to appeal from the judgment signed September 28, 2010, expired no later than 180 days after it was signed.  (Cal. Rules of Court, rule 8.104 (a)(3) & (c); see 9 Witkin, *supra*, Appeal, § 607, p. 682.)  The notice of appeal filed by the County and the notice of cross-appeal filed by Frye in October 2011 were filed more than 180 days later, and therefore were not timely, as the County concedes (assuming we treat the "Statement of Decision" as a judgment, which we do).[10]  Frye declined to brief this issue, forfeiting

_____

26.147, pp. 1601-1602, Recovering Costs, § 27.88, pp. 1650-1650.1.)  Frye did not timely file either a cost bill or motion for fees, thereby waiving any right to costs and fees.  (See *Hydratec, Inc. v. Sun Valley 260 Orchard & Vineyard Co*. (1990) 223 Cal.App.3d 924, 927-929; Cal. Rules of Court, rules 3.1700, 3.1702.)  However, ultimately, in the purported judgment made on August 22, 2011, the first trial court awarded Frye and Schultz costs of the proceedings, later entered by the clerk.  In any event, Frye does not contend the lack of a cost award precludes a finding that the "Statement of Decision" was a judgment, and therefore any such claim is deemed abandoned.  (*Alameda*, *supra*, 213 Cal.App.4th at p. 1203, fn. 42.)

[9]  In a portion of Frye's supplemental briefing addressing a different question, Frye asserts "plaintiffs did not receive any benefits" from the remand order contained in the "Statement of Decision," and that *they* were "aggrieved because the court didn't resolve their claims."  And in earlier briefing Frye asserted the remand was futile and "simply gave the agency a second chance to make the same argument."  Either way, if Frye were aggrieved by the "Statement of Decision," Frye, too, could have appealed therefrom, instead of waiting to appeal from the later purported judgment in the case.

[10]  Indeed, the trial court lost jurisdiction to act before plaintiffs moved on April 15, 2011 to have a formal judgment entered, because that motion was filed more than 180 days after the "Statement of Decision" was filed.

the point.  (See *People v. Anderson* (2007) 152 Cal.App.4th 919, 929 ["A point not argued or supported by citation to authority is forfeited"].)[11]

We are aware that between the time the "Statement of Decision" issued and the time the purported judgment was entered, the parties engaged in dialogue with the first trial court on the confusion caused by the miscaptioning, and also participated in further administrative hearings.[12]  But they failed to file a timely notice of appeal.

Although notices of appeal are construed broadly, and may be deemed to refer to a different order or judgment than specified, a *timely* notice of appeal is "an absolute prerequisite to the exercise of appellate jurisdiction."  (*Hollister Convalescent Hosp., Inc. v. Rico* (1975) 15 Cal.3d 660, 668-670; see *Maynard v. Brandon* (2005) 36 Cal.4th 364, 372-373 (*Maynard*); Cal. Rules of Court, rules 8.60(d) [appellate court may not relieve a party from the failure to file a timely notice of appeal], 8.104(b) [appellate court must

_____

[11]  Frye also filed an incomplete response to our supplemental briefing order.  We directed the parties to address several questions, two of which required the parties to *assume* the "Statement of Decision" was a judgment.  Frye merely replied "Not applicable" to these two questions.  These answers were not responsive to our order.
[12]  We grant the County's unopposed motion to augment the record to include letters to the trial court from Frye's counsel, dated December 22, 2010.  The County maintains that these letters show "it was the understanding of both counsel that the September 28, 2010 Statement of Decision was not intended to be a final judgment, but was instead intended as an interlocutory remand of the underlying matters to their respective hearing officers for further consideration."  Frye implicitly agrees with this view.  We agree that, generally, "a statement or memorandum of decision is not appealable."  (*Alan v. American Honda Motor Co., Inc.* (2007) 40 Cal.4th 894, 901.)  But the document did not contemplate further *judicial* action (cf. *In re Marriage of Campi* (2013) 212 Cal.App.4th 1565, 1570-1571), it ordered further *administrative* hearings, exhausting judicial power over the case under then-extant precedent.  And, "The caption, title, or label of a pleading or other document does not determine its nature or legal effect. . . . Rather, 'it is what is contained in the [document] itself that is significant.'"  (*Stiger v. Flippin* (2011) 201 Cal.App.4th 646, 654.)  In any event, the confusion of the parties is irrelevant to the timeliness of their appeals, as we explain immediately *post*.

11

dismiss the appeal if the notice of appeal is filed late]; 9 Witkin, *supra*, Appeal, § 601, pp. 677-678; see also *In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 761, fn. 8 ["California follows a 'one shot' rule under which, if an order is appealable, appeal must be taken or the right to appellate review is forfeited"].)

"In the absence of statutory authorization, neither the trial nor appellate courts may extend or shorten the time for appeal [citation], even to relieve against mistake, inadvertence, accident, or misfortune. Nor can jurisdiction be conferred upon the appellate court by the consent or stipulation of the parties, estoppel, or waiver." (*Estate of Hanley* (1943) 23 Cal.2d 120, 123; see *Maynard*, *supra*, 36 Cal.4th at pp. 372-373; 9 Witkin, *supra*, § 614, p. 689 [failure to file timely notice of appeal "cannot be excused by the trial judge's mistake or the adverse party's fraud"].)

Once the judgment on the first petition became final due to the lack of a timely appeal, the trial court's jurisdiction to act on that petition was exhausted. As we have said before, "judgments are parceled out at the ration of one per lawsuit." (*Paterno v. State of California* (1999) 68 Cal.App.4th 74, 110 (*Paterno*).) Thus, the "judgment" filed on August 22, 2011, was a nullity. (See, e.g., *Moore v. City & County of San Francisco* (1970) 5 Cal.App.3d 728, 734-735 (*Moore*) [second judgment "invalid on its face"].)[13] This second judgment in the same action could not trigger a new period in which to file a notice of appeal. Therefore, we dismiss the appeal and cross-appeal in 3 Civil No. C069500, as untimely.

_____

[13] In *Beavers v. Allstate Ins. Co.* (1990) 225 Cal.App.3d 310, 325-332, we held *Moore* and other cases involving the application of the one final judgment rule to a judgment notwithstanding a verdict on fewer than all causes of action effectively had been abrogated by subsequent legislation. That did not impair the part of *Moore* concluding that *if* there is a second judgment in a case, that second judgment is a nullity. In some cases there may be separate judgments as to separate *parties* (see Code Civ. Proc., §§ 578, 579; 7 Witkin, *supra*, Judgment, § 38, p. 576), but that is not relevant in this case.

## II

### *The Second Petition*

A. *Procedural Background*

In the new round of administrative hearings, the County tendered the record of the earlier hearings. Each of the hearing officers again sustained the respective seizures of Frye's and Schultz's horses.

On April 22, 2011, Frye filed the second mandamus petition (Butte Co. Super. Ct. No. 153564), partly contending that the hearing officers failed to explain why the pre-seizure remedy was not appropriate in either case.

On September 6, 2011, the trial court (McLean, J., "the second trial court") issued a statement of decision rejecting Frye's due process claims, concluding in the critical portion as follows:

> "Both hearing officers described the testimony upon which they relied in reaching their respective decisions. These decisions were both based upon sufficient and substantial evidence to reach the conclusion that the animals were seized because they were in dire need of assistance. This court finds that [the County] acted within the scope of its discretionary power and not in excess of that power.

> "The next question before the court is whether Penal Code section 597.1(f) or 597.1(g) applies to this matter. Based on the findings of the two hearing officers and the testimony at the hearings this court finds that sufficient evidence existed to authorize [the County] to seize the animals pursuant to Penal Code 597.1(f). This court finds that [the County] acted within its jurisdiction under the [Butte County Code] and the laws of the state of California and did not act in excess of its powers. Thus the procedures of 597.1(g) are not at issue in this matter."

On October 26, 2011, the second trial court issued a judgment denying the second petition, and Frye timely appealed therefrom.

B. *Argument*

Frye faults the hearing officers for not complying with the first trial court's order, because they did not compel the County to demonstrate why it seized the horses under

13

section 597.1, subdivision (f), instead of providing notice of the claimed violation and granting Frye a pre-seizure hearing, under section 597.1, subdivision (g), and faults the second trial court for not adhering to the first trial court's view of the law. Frye's briefs raise three arguments in advance of this general view. We reject each argument.

### 1. Law of the Case

Frye asserts that under the "law of the case" doctrine, the hearing officers had to determine whether the County's election to seize the horses was "more appropriate" than electing the remedy of notice to the owners and a pre-seizure hearing, and that the second trial court, in ruling on the second petition, was bound to review the new decisions by the standards set by the first trial court in its ruling on the first petition.

The "law of the case" doctrine provides generally that a prior *appellate* court ruling on the law generally governs further proceedings in the case, whether that ruling was right or wrong. (See *People v. Stanley* (1995) 10 Cal.4th 764, 786-787; *People v. Dutra* (2006) 145 Cal.App.4th 1359, 1364-1365.) But the doctrine does not apply to prior *trial* court rulings; therefore the ruling by the first trial court was not "law of the case." (See *Lawrence v. Ballou* (1869) 37 Cal. 518, 521; *Provience v. Valley Clerks Trust Fund* (1984) 163 Cal.App.3d 249, 256.)

Frye relies on three cases involving administrative hearings for the contrary proposition. In each of those cases, the law of the case doctrine was applied following a prior *appellate* decision. (*George Arakelian Farms, Inc. v. Agricultural Labor Relations Bd.* (1989) 49 Cal.3d 1279 (*George Arakelian Farms*); *Nielsen v. Industrial Acc. Com.* (1934) 220 Cal. 118; *United Dredging Co. v. Indust. Acc. Com.* (1930) 208 Cal. 705.) Nothing in any of these cases detracts from the settled rule that law of the case does not apply to prior trial court decisions.

Frye argues that the rise of administrative review under Code of Civil Procedure section 1094.5 somehow alters the scope of law of the case, by casting the superior court, in ruling on a petition for writ of mandate, in the role of an appellate court, for purposes

14

of law of the case. This contention departs from Supreme Court precedent. (See *George Arakelian Farms, supra,* 49 Cal.3d at p. 1291 ["the doctrine of the law of the case serves to promote finality of litigation by preventing a party from relitigating questions previously decided *by a reviewing court*" (emphasis added)].) Thus we cannot expand the doctrine, even were we inclined to do so. (See *Auto Equity Sales*, *supra,* 57 Cal.2d at p. 455.)

2. Scope of the Administrative Hearings on Remand

Frye argues the new hearings did not comply with the remand order contained within the first trial court's "Statement of Decision," and therefore the new hearings were not conducted according to law. This contention is forfeited because it is not separately headed as an argument. (See *In re S.C.* (2006) 138 Cal.App.4th 396, 408; *Opdyk v. California Horse Racing Bd.* (1995) 34 Cal.App.4th 1826, 1830-1831, fn. 4.)

Moreover, we find no due process violation. In each case, the hearing officer on remand found the evidence showed reasonable cause to believe "very prompt" action by animal control was necessary to protect the horses. Contrary to Frye's argument, if the facts show objectively reasonable cause to believe "very prompt" action was necessary, the statutory scheme *authorizes* immediate seizure, followed by a post-seizure hearing, consistent with due process. Indeed, when an animal control officer has reasonable grounds to believe that very prompt action is necessary, the statute commands that that officer "shall immediately seize" the animal(s) that are in danger or pose a danger to the public. (§ 597.1, subd. (a)(1).) The County was not required to show, in hindsight, that giving pre-seizure notice would have been "feasible" or "could have been used" or would have been "more appropriate" than taking immediate, lawful, action, as Frye contends

*Carrera v. Bertaini* (1976) 63 Cal.App.3d 721 (*Carrera*), relying in part on *Fuentes v. Shevin* (1972) 407 U.S. 67, 90 [32 L.Ed.2d 556, 576] (*Fuentes*), provided examples of the need for "very prompt action" in the context of animal seizures:

15

"[I]t is clear that at times the summary seizure of farm animals must be permitted to protect the personal safety and property rights of our citizens. For example, where an animal has strayed onto a public highway, it must be removed from the highway to avoid injury to motorists and others using the highway. Also, if an animal with dangerous propensities has escaped from its enclosure, it must be returned to its enclosure to avoid injury to others. So too, an injured, sick, or starving animal must be cared for in a humane way, if possible. In these situations, if after a reasonable investigation the officer is unable to locate the owner or person entitled to the possession of the animal for the purpose of giving him the opportunity of recapturing the animal or of caring for the animal as the situation may demand, then the officer must have the power summarily to take possession of the animal. Here, the governmental interest in protecting the person and property of others must be deemed to override the property right of the owner." (*Carrera*, *supra*, 63 Cal.App.3d at pp. 728-729.)[14]

The term "very prompt action" as used in section 597.1 was taken from *Fuentes*:

"Only in a few limited situations has this Court allowed outright seizure[fn.] without opportunity for a prior hearing. First in each case, the seizure has been directly necessary to secure an important governmental or general public interest. *Second, there has been special need for very prompt action*. Third, the state has kept strict control over its monopoly of legitimate force: the person initiating the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance. Thus, the court has allowed summary seizure of property to collect the internal revenue of the United States,[fn.] to meet the needs of a national war effort,[fn.] to protect against the economic disaster of a bank failure,[fn.] and to protect the public from misbranded drugs[fn.] and contaminated food.[fn.]" (*Fuentes*, *supra*, 407 U.S. at pp. 90-92 [32 L.Ed.2d at pp. 576-577], emphasis added; see *Carrera*, *supra*, 63 Cal.App.3d at p. 728.)

"Whether special circumstances warrant summary seizure depend upon the nature of the governmental interest, the need for "very prompt action," and the duty of the seizing official under the standards of a narrowly drawn statute." (*Phillips v. San Luis Obispo County Dept. etc. Regulation* (1986) 183 Cal.App.3d 372, 378; *Menefee & Son v.*

_____

14 We previously granted Frye's request for judicial notice of legislative documents regarding amendments responding to *Carrera*, which held a prior version of Penal Code section 597f and a local ordinance violated due process, because they did not provide for a post-seizure hearing. (*Carrera*, *supra*, 63 Cal.App.3d at pp. 729-730.)

*Dept. of Food & Agriculture* (1988) 199 Cal.App.3d 774, 781.) "[T]he statutory language authorizing immediate seizure when an animal control officer 'has reasonable grounds to believe that very prompt action is required to protect the health or safety of others' is the equivalent of the exigent circumstances exception familiar to search and seizure law. . . . There is no litmus test for emergencies; every case must be explained in light of what was known to the officer at the time of entry." (*Broden*, *supra*, 70 Cal.App.4th at pp. 1220-1221; see *Conway v. Pasadena Humane Society* (1996) 45 Cal.App.4th 163, 172.)

Thus, the findings by the hearing officers that the information known to the animal control officers at the time of the respective seizures gave reasonable grounds to believe "very prompt action" was needed to protect the horses was sufficient to show that those officers acted lawfully. No additional findings were necessary to uphold the seizures.

Nor do we agree with Frye's view that new *evidence* was required at the new hearings on remand. The parties submitted their respective cases on the records from the first hearings.[15] The hearing officers then each found the evidence supported the actions of the animal control officers.

In its remand order, the first trial court found that the *decisions* of the hearing officers had not addressed the question of election of remedies, not that the *evidence* at the first hearings was insufficient to establish the propriety of the actions of the animal control officers. In effect, it concluded the first round of administrative decisions contained a logical analytic gap that required a further hearing. (See *Topanga Assn. for a Scenic Community v. County of Los Angeles* (1974) 11 Cal.3d 506, 515 ["implicit in

_____

[15] In Frye's case, the new findings state: "The parties agreed that no new evidence would be offered at the supplemental hearing." In Schultz's case, the new findings explain that the parties submitted briefing and argument, the "Statement of Decision," the evidence and transcript from the first administrative hearing, and oral argument. Thus, neither party sought to produce more evidence.

section 1094.5 is a requirement that the agency which renders the challenged decision must set forth findings to bridge the analytic gap between the raw evidence and ultimate decision or order"]; *Singh v. Davi* (2012) 211 Cal.App.4th 141, 147-148.) The finding of an analytic gap does not equate to a finding that the raw evidence already introduced was insufficient.

### 3. The Butte County Code

Frye faults the second trial court's order denying the second mandamus petition because it referenced parts of the Butte County Code, including allegedly misquoting one part, in addition to referencing section 597.1. However, the thrust of this ruling was that the evidence showed the animal control officers had reasonable cause to believe "very prompt" action was needed to protect the various horses, thereby justifying resort to the post-seizure hearing remedy provided by section 597.1. The references to local ordinances were unnecessary, and therefore even if they were erroneous in some manner, any error was not prejudicial. Indeed, Frye forfeits the point by failing to articulate a coherent claim of prejudice. (See *Paterno*, *supra*, 74 Cal.App.4th at pp. 105-106.)[16]

_____

[16] We note with disapproval that Frye's counsel accuses the second trial court of "bias" and of acting as a "devious advocate" by referencing and purportedly misquoting the Butte County Code. A judge does not act as an advocate, let alone a "devious" one, by citing authority not mentioned by the parties. "The fact is that the trial judge, far from acting arbitrarily, filed a memorandum opinion in which [she] made a fair and comprehensive statement of the evidence and gave [her] reasons[.] It was [her] duty to rule as [her] judgment and conscience dictated. The criticism to which [she] has been subjected is inexcusable. And we may add that counsel who wrote plaintiff's briefs should not have assumed that we would be influenced by [his] epithets." (*Lazzarotto v. Atchison, T. & S. F. Ry. Co.* (1958) 157 Cal.App.2d 455, 462; see *Delger v. Jacobs* (1912) 19 Cal.App. 197, 208 ["untoward vituperation affords no credit to [counsel] and likewise neither entertainment nor enlightenment to the court"].)

18

## DISPOSITION

The appeal and cross-appeal in 3 Civil No. C069500 are dismissed as untimely. The judgment in 3 Civil No. C070095 is affirmed.

The County shall recover its costs in 3 Civil No. C070095; the parties shall bear their own costs on appeal in 3 Civil No. C069500.  (Cal. Rules of Court, rule 8.278(a).)


                                                              DUARTE_____, J.


We concur:


_____RAYE_____, P. J.


_____BUTZ_____, J.

19